NOTICE

Decision filed 05/20/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250256-U

NO. 5-25-0256

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 07-CF-968 |
| | ) | |
| BOBBY TATUM, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Cates and Justice McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in denying defendant's motion for leave to file his fifth successive postconviction petition. Because no argument to the contrary would have arguable merit, defendant's appellate counsel is granted leave to withdraw, and the judgment of the trial court is affirmed.

¶ 2    Defendant, Bobby Tatum, is serving a sentence of 24 years in prison after being convicted in 2007 of the offense of aggravated battery of a child, a Class X felony. On February 3, 2025, he filed a motion for leave to file his fifth successive postconviction petition. The trial court denied the motion, and defendant appealed from the denial. The Office of the State Appellate Defender (OSAD) was appointed as his appellate counsel. OSAD has concluded that this appeal lacks arguable merit and, on that basis, has filed a motion for leave to withdraw as counsel, pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a supporting memorandum of law. OSAD

1

properly served defendant with notice. This court gave defendant the opportunity to file a response to OSAD's motion. Defendant has filed responses. Having reviewed OSAD's *Finley* motion and memorandum, defendant's responses, and having examined the entire record on appeal, this court agrees with OSAD's assessment of this appeal.

¶ 3                              I. BACKGROUND

¶ 4      On June 28, 2007, defendant was indicted on two counts of aggravated battery of a child, a Class X felony. Both counts alleged that between March 1, 2007, and April 21, 2007, defendant, who was over the age of 18, hit S.D. (the minor), who was under the age of 13, "about the back and body with a[n] electric cord." Count I alleged defendant's actions "knowingly caused great bodily harm to" the minor, while count II alleged defendant's actions "knowingly caused permanent disfigurement to" the minor. On July 3, 2007, Assistant Public Defender Janie Miller-Jones (trial counsel) appeared on behalf of defendant at his arraignment.

¶ 5      On July 13, 2007, trial counsel appeared on behalf of Latasha Seets at Seets's arraignment in Champaign County case No. 07-CF-967, in which Seets was also charged with two counts of aggravated battery of a child. On July 19, 2007, in 07-CF-967, trial counsel's appointment was vacated due to "a conflict," and new counsel was appointed to represent Seets. On August 21, 2007, the charges against Seets in 07-CF-967 were dropped. The exact nature of the charges against Seets are not included in the record on appeal, but as discussed below, defendant alleges they involved the same events that led to defendant's charges.

¶ 6      Defendant's case proceeded to a jury trial that began on August 29, 2007. The State moved at the outset of the trial to dismiss count II, and to proceed only on count I. Of relevance to this appeal, Seets testified that she was 30 years old and disabled. She testified that the minor was her seven-year-old nephew, and that in the past, she sometimes had provided childcare and

2

transportation for the minor. She testified that defendant, whom she identified in court, was her sister's boyfriend and had lived with the minor since February 28, 2007. Seets testified that in "the middle of April" of 2007, she went to the minor's home to recover a video game memory card the minor allegedly had stolen from Seets's 14-year-old son. She testified that defendant handed her the memory card, then she "spanked" the minor "a couple of times across the behind" with her son's belt. She testified that prior to spanking the minor, she told him that stealing was wrong and that he could end up in jail for stealing. She testified that she spanked the minor over his clothes, and without much force, "slightly tapp[ing] across his butt." She testified that he did not scream or yell, but "sobbed."

¶ 7    Seets testified that the following week, she did not take the minor to school as usual. She testified that she next saw the minor one week after the spanking, on Friday, April 20, 2007. Seets testified that she took the minor and his mother and brother to Seets's home that day, and that at her home, she observed injuries on the minor's back. Seets testified that the bruises and other injuries seen in photographs admitted into evidence by the State were the bruises and injuries she observed personally, and that she did not cause them. She denied that she hit the minor with an extension cord. She agreed that the injuries were located on the minor's hands, arms, side, upper back, lower back, upper hip, and upper legs.

¶ 8    Seets testified that when she saw the injuries, she "freaked out." She testified that she informed the police of the injuries the following day. She testified that she admitted to police that she hit the minor with a belt, and that although she was later arrested for that, the charges were dropped. She was not asked, and did not specify on her own, the case number of those charges. Seets testified that she was testifying truthfully and of her own free will. She further testified that she did not "have any personal beef against" defendant. On cross-examination, Seets testified that

3

she waited a day to call the police because she expected her "sister to step up to be a parent to call the police herself."

¶ 9    The minor testified that he remembered the day Seets came to his home to retrieve the memory card. He testified that she was "angry" at him and that she "whupped" him with a belt. He testified that Seets hit him "[t]wo times" with the belt on his "behind," and that he yelled because "it hurt some." He testified that Seets stopped after hitting him two times, and again testified that she did not hit him more times than that. When asked if anyone else hit him that day, the minor answered, "Bobby," which we note is defendant's first name. The minor testified that after Seets left the home, Bobby hit him with a "switching cord." When asked how many times Bobby hit him, the minor testified, "Like a lot." He identified himself in the previously-admitted photographs and testified that the injuries came from Bobby, not Seets. The minor testified that his mother "screamed" at Bobby after coming home and seeing the injuries. He testified that Bobby kept him home from school for the next week. On cross-examination, the minor again testified that after Seets hit him with the belt and left the home, Bobby "whupped" him. He agreed that when the police came to his home, he first told them that Seets, not Bobby, caused his injuries. He further agreed that when he was interviewed again by police, he first told them the same thing.

¶ 10    Officer Daniel Ward testified that he had been employed by the city of Champaign as a police officer for three years. He testified that he responded to a call that a child was being abused, and that "[t]he dispatcher advised that [Seets] had called to report that [defendant] was there and had whipped the boy." Officer Ward testified that he helped the minor lift his shirt so Officer Ward could observe the injuries. He testified that there were many injuries, and that "[t]he impact point was in the shape of a 'u.' " He added that the injuries "were all consistent with the same size and it appeared that a flexible object had been folded over itself and that's what he had been struck

4

with." Officer Ward testified that the injuries were consistent with being struck with an extension cord, not a belt, because "[a] belt is thick." He added, "Usually when a belt is struck and hits a person it leaves a mark the width of the belt. This was much thinner." He testified that he observed several extension cords in the living room, including "a thick extension cord for exterior, outside *** that was consistent with the *** marks on [the minor's] back." He testified that he did not seize any of the extension cords. Officer Ward testified that the minor told him that Seets caused the injuries, and that the minor denied that defendant caused them. On cross-examination, Officer Ward agreed that both times he interviewed the minor on April 21, 2007, the minor said that Seets, not defendant, caused the injuries. He agreed that defendant was in the home, but was not "standing right next to" the minor when Officer Ward questioned the minor.

¶ 11    Detective Dale Rawdin testified that he had been employed by the Champaign Police Department for almost 13 years. He testified that he interviewed Seets three times during his investigation. He testified that in the first interview, Seets did not tell him that she had hit the minor. Detective Rawdin testified that in the second interview, Seets denied hitting the minor. He testified that in the third interview, Seets admitted "she had initially been untruthful," and "that she had, in fact, spanked the child three times with a belt." He testified that he did not threaten Seets or promise her anything, and that she made the statement voluntarily.

¶ 12    Detective Mark Huckstep testified that he had been employed by the Champaign Police Department for 16 years. He testified as to his specialized training in conducting forensic interviews of juveniles, and that he interviewed the minor in this case. He testified about the ways in which he tried to make the minor feel comfortable when interviewing the minor at the Child Advocacy Center in Urbana. Detective Huckstep testified that the interview took place on April 25, 2007, and that it was video and audio taped. He authenticated a CD disc that contained a

5

recording of the interview, and also authenticated a transcript of the interview, both of which were admitted into evidence. Copies of the transcript were given to the jurors so that they could read along as the recording of the interview was played.

¶ 13    In the interview, the minor first stated that Seets "[w]hooped" him with an extension cord. He thereafter stated that both Seets and defendant "whipped" him. The minor later stated that first Seets "whooped" him, then defendant "whooped [him] with an extension cord." The minor also stated that defendant hit him "a lot of times," and "threw [him] on the ground." The minor stated that defendant stepped on the minor's head, and hit the minor with his hand. He stated that his mother was mad at defendant for hurting the minor's back. He reiterated that defendant hit him "[a] lot of times." On cross-examination, Detective Huckstep agreed that the minor's narrative shifted at times throughout the interview and was not always easy to follow.

¶ 14    The State rested, and following the denial of his motions for a directed verdict, defendant chose not to present any evidence. Following closing arguments, the trial court instructed the jury. After deliberating for approximately 40 minutes, the jury found defendant guilty of aggravated battery of a child.

¶ 15    On September 19, 2007, new counsel was appointed to represent defendant, after trial counsel filed a motion alleging her own ineffectiveness, based upon trial counsel's failure to impeach Seets at trial with the fact that "Seets had been found unfit to stand trial and that the case against her involving the same child victim had been dismissed prior to the [c]ourt finding her unfit." Trial counsel alleged that she "neglected to get the court file for [Seets], failed to review the report generated by Dr. Jeckel and failed to impeach [Seets] with the" statement Seets made to Dr. Jeckel that Seets had "a psychosis, bipolar," and that she forgot "things" and heard voices that told her she was stupid and told her to hurt people. Trial counsel alleged that because Seets also

6

could have caused the minor's injuries, if trial counsel had "obtained this information prior to trial and properly impeached [Seets], it could have manifestly changed the jury's verdict from guilty to not guilty."

¶ 16 New counsel did not claim—in the amended posttrial motion he thereafter filed, in the addendum to that motion, or at the hearing on those motions—that trial counsel had a *per se* conflict of interest because she represented Seets at the same time she represented defendant during pretrial proceedings. At the hearing on the motions, however, new counsel did ask the trial court to take judicial notice of the file in case No. 07-CF-967 and its contents, which the trial court agreed to do. Nothing from that file was placed in defendant's case file. Following the hearing, the trial court denied the posttrial motions, concluding that defendant was not prejudiced by trial counsel's failure to impeach Seets, because "the evidence against [defendant] was overwhelming," and "even if you remove the testimony of [Seets], even if you assumed she was impeached or that information from Dr. Jeckel's report was elicited, *** the result would have been the same."

¶ 17 Defendant did not raise the claim that trial counsel had a *per se* conflict of interest because she represented Seets at the same time she represented defendant during pretrial proceedings in any of the following proceedings: (1) his direct appeal from his conviction and sentence, (2) his initial postconviction petition, or (3) multiple additional collateral attacks on his conviction and sentence.

¶ 18 On June 1, 2016, defendant filed a *pro se* petition for relief from judgment in which he claimed for the first time that he received ineffective assistance of counsel because trial counsel had a *per se* conflict of interest because she represented Seets at the same time she represented defendant during pretrial proceedings. He claimed that he could not raise the issue sooner because the facts surrounding it had been "fraudulently concealed" from him. He claimed, in an

accompanying affidavit, that he discovered the issue in April 2016. The three pages of docket sheets from case No. 07-CF-967 were attached to the petition, and for that reason are included in the record on appeal in this case.

¶ 19 On March 28, 2017, the trial court dismissed defendant's petition. The trial court stated that trial counsel "appeared with Seets one time in arraignment court at the first appearance, and then a private attorney was appointed to represent Seets." The trial court added, "All the parties knew this information." The trial court also ruled that the file in case No. 07-CF-967 was not fraudulently concealed from defendant. This court affirmed the dismissal, although we did not reach the merits of defendant's claim because we concluded that his appeal did not properly challenge, from a procedural perspective, the dismissal. *People v. Tatum*, 2019 IL App (4th) 170295-U, ¶¶ 23, 26.

¶ 20 On November 4, 2019, defendant filed a *pro se* motion for leave to file a successive postconviction petition. Therein, he again raised the claim that he received ineffective assistance of counsel when trial counsel had a *per se* conflict of interest because she represented Seets at the same time she represented defendant during pretrial proceedings. On March 30, 2020, the trial court denied the motion. The trial court again pointed out that trial counsel "appeared with Seets one time for a first appearance with the defendant on video in arraignment court on July 13, 2007[,] and on July 19, 2007[,] the appointment of the public defender was vacated, and a private attorney was appointed to represent Seets." The trial court also pointed out that in his posttrial motions, defendant challenged trial counsel's effectiveness in part because of trial counsel's alleged failure to investigate Seets's court file and the question of Seets's fitness. The trial court stated that "the issues surrounding Seets's case and what her court file contained were an important focus of" the

8

posttrial hearing, and that, as a result, "[t]he existence and significance of Seets' court file and its contents were known to [defendant] no later than December of 2007."

¶ 21 On appeal, this court affirmed the ruling of the trial court. *People v. Tatum*, 2021 IL App (4th) 200206-U, ¶ 3. We held that the factual basis for defendant's *per se* conflict of interest claim was reasonably available to him, and that defendant did not identify any objective factor that prevented him from obtaining information related to his claim before he filed his initial postconviction petition. *Id.* ¶ 23. We specifically noted that the record showed that at the time of his posttrial proceedings, defendant was aware of Seets's case and that her court file contained information relevant to his case. *Id.* Accordingly, we found that defendant did not make a *prima facie* showing of cause, and that the denial of his motion for leave to file a successive postconviction petition was proper. *Id.*

¶ 22 On July 31, 2023, defendant filed his fourth *pro se* motion for leave to file a successive postconviction petition, which consisted in part of the same motion he filed in 2019. Defendant again raised the issue of trial counsel's alleged *per se* conflict of interest, and added the claim that defendant should be allowed to file his petition based upon new case law. The trial court denied defendant leave to file the petition. On appeal, we again affirmed the trial court. *People v. Tatum*, 2024 IL App (5th) 230653-U.

¶ 23 On February 3, 2025, defendant filed the pleading at issue in this appeal: his fifth *pro se* motion for leave to file a successive postconviction petition. Therein, defendant raised a claim concerning trial counsel's alleged *per se* conflict of interest and the sufficiency of the record at the time of his direct appeal. Specifically, defendant alleged that his due process rights were violated because the documents related to Seets's case were not placed in defendant's court file in the present case. He asserted that someone—trial counsel, posttrial counsel, the State, the trial court,

9

or the circuit clerk—should have ensured the documents were placed in his file, and that the failure to do so prevented him from obtaining "adequate and effective review" of the record for purposes of pursuing a claim, in his direct appeal or his initial postconviction petition, of trial counsel's alleged *per se* conflict of interest.

¶ 24 On February 7, 2025, the trial court denied the motion. The trial court ruled that defendant's current claims were procedurally barred, and that defendant's motion was "filled with conclusory statements without supporting facts/documents." This timely appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26 As noted previously, OSAD has filed a *Finley* motion to withdraw as counsel. In the legal memorandum that accompanies the motion, OSAD raises a single potential issue: whether it was error for the trial court to deny the motion. OSAD explains in detail why it believes defendant's claim fails to establish cause and prejudice, as required for the filing of a successive postconviction petition, and why it fails to establish actual innocence. For the reasons that follow, we agree with OSAD that the trial court did not err.

¶ 27 The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)) provides a means by which a criminal defendant may assert that, in the proceedings that resulted in the defendant's conviction, there occurred a substantial denial of the defendant's rights under the United States Constitution, the Illinois Constitution, or both. *People v. Evans*, 2013 IL 113471, ¶ 10 (citing 725 ILCS 5/122-1(a)(1) (West 2008)). "A post-conviction petition is a collateral attack upon a prior conviction and sentence, not a surrogate for a direct appeal." *People v. Tenner*, 206 Ill. 2d 381, 392 (2002). Accordingly, any issues that were decided in the defendant's direct appeal are barred by the doctrine of *res judicata*, and any issues that could have been raised on direct appeal, but were not, are procedurally defaulted. *Id.* Moreover, the Act allows the filing of only

10

one postconviction petition without leave of court and expressly states that any claims not raised in the original petition or an amended petition are waived. *Evans*, 2013 IL 113471, ¶ 10.

¶ 28   The doctrine of collateral estoppel is applicable to petitions filed under the Act, and "bars relitigation of an issue already decided in a prior case." *Tenner*, 206 Ill. 2d at 396. For purposes of a collateral estoppel analysis under the Act, a case involving a successive postconviction petition is considered a separate case from earlier postconviction petitions. *Id.* Three requirements must be met for collateral estoppel to apply to a petition filed under the Act: (1) a final judgment has been rendered in a prior case, (2) the party against whom estoppel is asserted was a party in that prior case, and (3) the issue decided in the prior case is identical to the one presented in the instant case. *Id.* Collateral estoppel does not apply if the defendant presents new evidence about the prior issue. *Id.* at 397.

¶ 29   The Illinois Supreme Court has repeatedly held that because the deterrent effect of this state's criminal laws is undermined when criminal convictions lack finality, the filing of successive postconviction petitions is highly disfavored, and is permissible in only very limited circumstances. See, *e.g.*, *People v. Montanez*, 2023 IL 128740, ¶ 73. Accordingly, a defendant must obtain leave of court to initiate a successive postconviction proceeding. *Evans*, 2013 IL 113471, ¶ 10. If the proposed successive postconviction petition does not raise a claim of actual innocence, leave of court is granted only if the defendant establishes cause for the defendant's failure to bring the claim in the original or amended petition, and establishes that prejudice to the defendant resulted from that failure. *Id.* To establish cause, a defendant must identify an objective factor that impeded the defendant's ability to raise a specific claim in the initial postconviction petition proceedings. *Id.* To demonstrate prejudice, the defendant must show that the claim not raised earlier so infected the trial that the defendant's resulting conviction or sentence violated the

11

due process rights of the defendant. *Id.* The failure to establish either prong of the cause-and-prejudice test is fatal to the proposed successive postconviction petition and warrants its dismissal. See, *e.g.*, *People v. Smith*, 2014 IL 115946, ¶ 37.

¶ 30 If the proposed successive postconviction petition raises a claim of actual innocence, the cause-and-prejudice test is not applicable; instead, the defendant must present supporting evidence that is newly discovered, material and not cumulative, and of such conclusive character that it would probably change the result on retrial. See, *e.g.*, *People v. Robinson*, 2020 IL 123849, ¶¶ 42, 44-47. "Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence." *Id.* ¶ 47. Evidence is considered to be material if the evidence "is relevant and probative of the petitioner's innocence," and it is considered to be noncumulative if it "adds to the information that the fact finder heard at trial." *Id.* The conclusive character of the new evidence is the most important element of an actual innocence claim, and refers to evidence that, when considered along with the evidence actually adduced at trial, would probably lead to a different result. *Id.* The ultimate question is whether the supporting evidence presented by the petitioner "places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id.* ¶ 48.

¶ 31 This court reviews *de novo* a trial court's denial of leave to file a successive postconviction petition. *People v. Parker*, 2019 IL App (5th) 150192, ¶ 17. We may affirm the trial court's judgment on any basis supported by the record, regardless of whether that was the basis relied upon by the trial court. See, *e.g.*, *People v. Kuehner*, 2022 IL App (4th) 200325, ¶ 67.

¶ 32 In this case, OSAD is correct that the doctrine of collateral estoppel precludes defendant's current contention that the record at the time of his direct appeal, and at the time he filed his initial postconviction petition, was insufficient for him to raise his claim that trial counsel had a *per se*

12

conflict of interest. As OSAD notes, in our order affirming the denial of defendant's 2019 motion for leave to file a successive postconviction petition, we held that the factual basis for defendant's *per se* conflict of interest contention was reasonably available to him, and that defendant did not identify any objective factor that prevented him from obtaining information related to this contention before he filed his initial postconviction petition. *Tatum*, 2021 IL App (4th) 200206-U, ¶ 23. We specifically noted that the record showed that at the time of his posttrial proceedings, defendant was aware of Seets's case and that her court file contained information relevant to his case. *Id.* Accordingly, we found that defendant did not make a *prima facie* showing of cause, and that the denial of his motion for leave to file a successive postconviction petition was proper. *Id.*

¶ 33     As explained above, three requirements must be met for collateral estoppel to apply to a petition filed under the Act: (1) a final judgment has been rendered in a prior case, (2) the party against whom estoppel is asserted was a party in that prior case, and (3) the issue decided in the prior case is identical to the one presented in the instant case. *Tenner*, 206 Ill. 2d at 396. Also as explained above, for purposes of a collateral estoppel analysis under the Act, a case involving a successive postconviction petition is considered a separate case from earlier postconviction petitions. *Id.* Here, the requirements for collateral estoppel are met because (1) defendant's 2019 motion for leave to file a successive postconviction petition was a prior, separate case from this case, and our order was a final judgment in that case; (2) defendant was a party to that case; and (3) the issue decided in that prior case was identical to the issue he presently raises on appeal, because it is irrelevant whether the Seets file materials were placed in defendant's file where, as here, this court has already determined that the factual basis for defendant's *per se* conflict of interest claim was reasonably available to him at the time he filed his initial postconviction petition. Although, as explained above, collateral estoppel does not apply if new evidence about the issue

13

is presented (*id.* at 397), in this case defendant does not present any new evidence—he simply attempts to reassert, by stating it in slightly different terms, the same issue this court previously rejected in his earlier appeal.

¶ 34   Moreover, to the extent defendant argues that his claim was not available to him earlier because the case law supporting it did not exist, OSAD is correct that three of the cases cited by defendant in support of his legal theory predate both his direct appeal and his initial postconviction petition, and the fourth case has no precedential value because it is an unpublished decision filed prior to January 1, 2021. See Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021). In addition, when defendant brought this same claim earlier, it was rejected for factual reasons, not because there was no existent legal basis for the claim.

¶ 35   OSAD also is correct that defendant's motion does not support an actual innocence claim. Defendant has presented no newly discovered evidence that would in any way show his innocence. To the extent defendant seems to argue that the docket sheets in Seets's case could be construed to imply that Seets contributed to the minor's injuries, they do not, under even the most liberal construction, suggest that she was the sole perpetrator and that therefore defendant is actually innocent of aggravated battery of a child. Thus, there is no factual basis in defendant's motion that even arguably supports an actual innocence claim.

¶ 36                                III. CONCLUSION

¶ 37   This court's independent examination of the entire record establishes that this appeal does not present any issues of arguable merit. Therefore, the motion of appointed counsel to withdraw is granted, and the judgment of the circuit court of Champaign County is affirmed.


¶ 38   Motion granted; judgment affirmed.

14